1
2
3                       UNITED STATES DISTRICT COURT
4                     NORTHERN DISTRICT OF CALIFORNIA
5
6    DOMINIQUE LOPEZ,                    | Case No.  24-cv-03573-HSG
7                  Plaintiff,            | **ORDER GRANTING DEFENDANTS'**
                                         | **MOTION TO DISMISS AND**
8           v.                           | **DEFENDANTS' REQUEST FOR**
                                         | **JUDICIAL NOTICE**
9    MEAD JOHNSON NUTRITION              |
     COMPANY, et al.,                    | Re: Dkt. No. 34, 45
10
                  Defendants.
11

12         Pending before the Court are Defendants Mead Johnson Nutrition Company and Mead

13   Johnson & Company, LLC's (collectively, "Defendants") motion to dismiss and request for

14   judicial notice.  Dkt. No. 34 ("Mot."); Dkt. No. 45.  The Court finds the matters appropriate for

15   disposition without oral argument and take them under submission.  *See* Civil L.R. 7-1(b).  For the

16   following reasons, the Court **GRANTS** Defendants' motion to dismiss and request for judicial

17   notice.

18   **I.    BACKGROUND**

19         In June 2024, Plaintiff Dominique Lopez ("Plaintiff") filed a putative class action

20   complaint against Defendants concerning the labeling of certain infant formulas, including

21   Enfamil® A.R., Enfamil® Gentlease, Enfamil® Enspire Gentlease, Enfamil® NeuroPro,

22   Enfamil® NeuroPro Sensitive, Enfamil® Nutramigen, and Enfamil® ProSobee (the "Infant

23   Formulas").  Dkt. No. 1 ("Compl.") ¶¶ 38, 121.  Plaintiff alleges that the Infant Formulas contain

24   arsenic, cadmium, and lead (the "Heavy Metals"), which "can increase the material risk of various

25   health issues"  *Id*. ¶¶ 40, 46.  According to Plaintiff, testing of the Infant Formulas has "confirmed

26   the presence of undisclosed Heavy Metals at the following levels:"

27

28

United States District Court
Northern District of California

| Infant Formula | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) |
|---|---|---|---|
| Enfamil® A.R. | 3.4 | 3.2 | 1.2 |
| Enfamil® Gentlease | 3.7 | 2.6 | 1.7 |
| Enfamil® Enspire Gentlease | 5.0 | 2.3 | < 1.0 |
| Enfamil® NeuroPro | < 2.2 | 2.0 | < 1.0 |
| Enfamil® NeuroPro Sensitive | 5.1 | < 1.3 | 2.3 |
| Enfamil® Nutramigen | 7.9 | 4.6 | 6.5 |
| Enfamil® ProSobee | 6.7 | 6.8 | 3.5 |

*Id*. ¶¶ 40, 125.  Plaintiff alleges that Defendants "intentionally omitted from [their] packaging any mention of the presence (or material risk) of Heavy Metals in the Infant Formulas" and the "packaging communications misled and deceived reasonable consumers because Defendant[s] actively and knowingly concealed and failed to disclose that the Infant Formulas contained (or had a material risk of containing) Heavy Metals, while representing nutritious qualit[ies] and characteristics."  *Id*. ¶¶ 84, 119.

Plaintiff brings seven causes of action against Defendants: (1) violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.); (2) violation of California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500 et seq.); (3) violation of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 et seq.), (4) breach of implied warranty of merchantability under California Commercial Code § 2314; (5) common law breach of implied warranty of merchantability; (6) fraud by omission; and (7) unjust enrichment.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  To meet his burden of

United States District Court
Northern District of California

establishing standing, a plaintiff must show he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). And where a plaintiff seeks injunctive relief, he must also demonstrate a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

If a plaintiff fails to establish standing or any other aspect of subject matter jurisdiction, "the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

## B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

United States District Court
Northern District of California

1    Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a

2    claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity

3    the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317

4    F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how"

5    of the alleged conduct, so as to provide defendants with sufficient information to defend against

6    the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent,

7    knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

8    Rule 9(b).

9    Even if the court concludes that a 12(b)(6) motion should be granted, the "court should

10   grant leave to amend even if no request to amend the pleading was made, unless it determines that

11   the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

12   F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

13   **III.    DISCUSSION**

14   **A.    Request for Judicial Notice**

15   Before turning to the substance of Defendants' motion, the Court addresses Defendants'

16   request for judicial notice. Dkt. No. 45.

17   In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and

18   incorporation by reference doctrine. *See* 899 F.3d 988 (9th Cir. 2018). Under Federal Rule of

19   Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because

20   it … can be accurately and readily determined from sources whose accuracy cannot reasonably be

21   questioned." Fed. R. Evid. 201(b)(2). Accordingly, a court may take "judicial notice of matters of

22   public record," but "cannot take judicial notice of disputed facts contained in such public records."

23   *Khoja*, 899 F.3d at 999 (citation and quotations omitted). The Ninth Circuit has clarified that if a

24   court takes judicial notice of a document, it must specify what facts it judicially noticed from the

25   document. *Id*. at 999. Further, "[j]ust because the document itself is susceptible to judicial notice

26   does not mean that every assertion of fact within that document is judicially noticeable for its

27   truth." *Id*. As an example, the Ninth Circuit held that for a transcript of a conference call, the

28   court may take judicial notice of the fact that there was a conference call on the specified date, but

United States District Court
Northern District of California

1   may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject

2   to varying interpretations, and there is a reasonable dispute as to what the [document] establishes."

3   *Id*. at 999–1000.

4        Defendants ask the Court to take judicial notice of the July 29, 2024 consent judgment

5   entered in *People of the State of California v. Mead Johnson Nutrition Company, et al.*, Alameda

6   County Superior Court, Lead Case No. RG18912553 (the "Mead Consent Judgment").[1]  The

7   Mead Consent Judgment is a publicly available court record that is not subject to reasonable

8   dispute.  The Court therefore **GRANTS** Defendants' request for judicial notice.  However, in

9   keeping with *Khoja*, the Court will consider the contents of the Mead Consent Judgment but will

10  not assume their truth.

11       **B.    Motion to Dismiss**

12       Defendants move to dismiss Plaintiff's complaint in its entirety, arguing "the Court need

13  not reach the sufficiency of [Plaintiff's] factual allegations or causes of action" because the

14  doctrine of primary jurisdiction should be applied.  Mot. at 10.

15       Defendants argue in the alternative that Plaintiff's claims fail as a matter of law.  First,

16  Defendants argue that Plaintiff lacks standing to seek equitable relief.  Next, Defendants argue that

17  Plaintiff's UCL claim based on fraud and CLRA claim should be dismissed because (1)

18  Defendants "ha[ve] not made any affirmative misrepresentations about [H]eavy [M]etals on [their]

19  infant formula labeling" and (2) Defendants have no duty to disclose Heavy Metal levels.  *Id*. at

20  11.  Defendants also argue that because they had no duty to disclose the presence of [H]eavy

21  [M]etals, Plaintiff's fraud claim fails.  Defendants further argue Plaintiff's unfair UCL claim fails

22  because it shares the same basis as Plaintiff's allegedly deficient fraud-based UCL claim.  *Id*.

23  Moving on to Plaintiff's FAL claim, Defendants argue that an FAL claim cannot be based on an

24  omission.  *Id*.  Defendants further argue that because Plaintiff's unlawfulness claim under the

25  UCL is based on Defendants' alleged FAL violation, that claim should be dismissed.  *Id*.  Next,

26  Defendants argue that Plaintiff's "statutory and common law breach of implied warranty claims

27

28  [1] Plaintiff relied on the Mead Consent Judgment throughout its opposition brief but did not seek
    judicial notice of it.  Dkt. No. 40 ("Opp.") at 11, 25, 29, 31, 34.

United States District Court
Northern District of California

fail because [Plaintiff] is not in privity with [Defendant] and [Plaintiff] does not allege the infant formula she purchased did not fulfil[l] its intended purpose—nourishment." *Id*.  Finally, Defendants argue Plaintiff's unjust enrichment claim should be dismissed because California law does not permit a standalone claim for unjust enrichment.  *Id*.

> **i.    Primary Jurisdiction**

Defendants argue the Court should dismiss the entire case because the Food and Drug Administration ("FDA") has "primary jurisdiction to determine the appropriate levels of [H]eavy [M]etals in [I]nfant [F]ormulas." *Id*. at 13.  According to Defendants, the FDA has "engaged in an ongoing initiative, the 'Closer to Zero' Action Plan, by which the agency has taken responsibility for regulating the same three heavy metals on which Plaintiff focuses—arsenic, cadmium, and lead—in foods intended for infants, including formula." *Id*.  Defendants argue that Plaintiff's claims, "[w]hile styled as false advertising and fraud-based claims . . . would ultimately require this Court to decide what level of [H]eavy [M]etals make infant formula 'unsafe[,]'" which is an issue better addressed by the FDA. *Id*. at 15.  Plaintiff counters that "[t]he issue here—deceptive labeling related to the presence or risk of [H]eavy [M]etals—is not subject to regulatory authority, nor does it require regulatory expertise or uniformity." Opp. at 14.

Primary jurisdiction is a doctrine intended to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties[,]" and "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63–64 (1956).  "Although the question is a matter for the court's discretion," courts normally consider four factors outlined in *Syntek Semiconductor Co. v. Microchip Tech*: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." 307 F.3d 775, 781 (9th Cir. 2002).  When examining whether to defer to an agency's jurisdiction at the motion to dismiss stage, courts must "apply a standard derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts a claim that

6

United States District Court
Northern District of California

1 would not implicate the [primary jurisdiction] doctrine." *County of Santa Clara v. Astra U.S.*, 588

2 F.3d 1237, 1252 (9th Cir. 2009) (rejecting a request to invoke primary jurisdiction where the court

3 could plausibly adjudicate the action without agency expertise), *rev'd on other grounds*, *Astra*

4 *USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 131 (2011).  The doctrine is reserved for a

5 "limited set of circumstances" that "require[] resolution of an issue of first impression, or of a

6 particularly complicated issue that Congress has committed to a regulatory agency."  *Astiana v.*

7 *Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (citation and quotations omitted).

8    The Court declines to invoke the primary jurisdiction doctrine.  None of the claims

9 presented here require resolution of an issue of first impression, or of a particularly complicated

10 issue that Congress has committed to a regulatory agency.  Although Defendants argue otherwise,

11 Plaintiff does not seek a determination of "the amount of [H]eavy [M]etals that can be present in

12 infant formula without making it 'unsafe.'"  Mot. at 13.  Rather, Plaintiff alleges "deceptive

13 labeling related to the presence or risk of [H]eavy [M]etals."  Opp. at 14.  Claims alleging

14 deceptive labeling are well within the competency of the Court.  *See Lockwood v. Conagra Foods,*

15 *Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) (declining to apply the primary jurisdiction

16 doctrine and explaining "this is not a technical area in which the FDA has greater technical

17 expertise than the courts—every day courts decide whether conduct is misleading"); *In re Theos*

18 *Dark Chocolate Litig.*, No. 23-CV-02739-HSG, 2024 WL 4336631, at *7 (N.D. Cal. Sept. 27,

19 2024) ("Here, the [c]ourt finds staying or dismissing any claims based on the primary jurisdiction

20 doctrine unwarranted. This case is far less about the science of food safety than it is about whether

21 a product label is misleading."); *Paschoal v. Campbell Soup Co.*, No. 21-CV-07029-HSG, 2022

22 WL 4280645, at *5 (N.D. Cal. Sept. 15, 2022) ("As [p]laintiffs note, courts routinely decline to

23 invoke the primary jurisdiction doctrine in food labeling cases . . . . That is especially true in cases

24 like this one, where the allegations do not involve technical or scientific issues, but rather

25 allegations that the label is misleading.").

26    Moreover, "[t]he Court has no reason to believe that the FDA is currently conducting a

27 binding investigation or rulemaking process regarding [H]eavy [M]etals in [infant formula] that

28 will conclude soon . . . ."  *In re Theos Dark Chocolate Litig.*, 2024 WL 4336631, at *7.  Although

1  the FDA recently issued final guidance regarding action levels for lead in foods intended for

2  babies and young children as part of the "Closer to Zero" initiative, such guidance is nonbinding.

3  *See* Food and Drug Administration, *Action Levels for Lead in Processed Food Intended for Babies*

4  *and Young Children: Guidance for Industry*, Jan. 2025, https://www.fda.gov/media/164684/

5  download.  Additionally, the FDA has not indicated when it expects to release final guidance

6  regarding action levels for arsenic and cadmium in foods intended for babies and young children.

7  The Court therefore sees no reason to defer to the FDA's jurisdiction, and declines to dismiss

8  Plaintiff's complaint based on the primary jurisdiction doctrine.

9              **ii.    Standing**

10          Plaintiff's UCL, FAL, CLRA, fraud, and unjust enrichment claims seek equitable relief.

11  The CLRA, fraud and unjust enrichment claims seek an injunction, and the UCL and FAL claims

12  seek both restitution and an injunction.  Defendants argue (1) Plaintiff cannot seek injunctive relief

13  because she does not have Article III standing, and (2) Plaintiff cannot seek equitable relief

14  because she has not pled she lacks an adequate remedy at law.

15              a.   Injunctive Relief

16          Defendants argue Plaintiff lacks Article III standing to seek injunctive relief because

17  Plaintiff "does not provide any factual allegations to support the notion that she faces an

18  'imminent threat of future harm to [herself], personally . . . .'"  Mot. at 19.  Defendants

19  specifically argue that Plaintiff "does not allege any concrete or imminent 'intent to purchase'

20  more [of Defendants] infant formula" but merely alleges that "she would [purchase more formula]

21  if she could be certain the products did not contain or risk containing [Heavy Metals]."  *Id.*

22          To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a

23  real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1 Imports (U.S.) Inc.*,

24  631 F.3d 939, 946 (9th Cir. 2011) (internal quotation omitted).  A plaintiff is entitled to injunctive

25  relief only if they can show that they face a "real or immediate threat that they will again be

26  wronged in a similar way."  *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010)

27  (quotation and citation omitted).  Ninth Circuit precedent has made clear that "a previously

28  deceived consumer may have standing to seek an injunction against false advertising or labeling,

8

1    even though the consumer now knows or suspects that the advertising was false at the time of the

2    original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or

3    hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th

4    Cir. 2018). *Davidson* identifies two ways a plaintiff may establish the required risk of future

5    harm: (1) "the consumer's plausible allegations that [they] will be unable to rely on the product's

6    advertising or labeling in the future, and so will not purchase the product although [they] would

7    like to"; or (2) "the consumer's plausible allegations that [they] might purchase the product in the

8    future, despite the fact it was once marred by false advertising or labeling, as [they] may

9    reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

10    Here, Plaintiff alleges she "would be willing to purchase Enfamil® products in the future if

11    she could be certain that they do not contain (or have a material risk of containing) Heavy Metals."

12    Compl. ¶ 32. Plaintiff further alleges that "should [she] encounter the Infant Formulas in the

13    future, she could not rely on the truthfulness of the packaging, absent corrective changes to the

14    packaging and advertising of the Infant Formulas." *Id.* ¶ 33; *see also id.* ¶ 185 ("Defendants[']

15    conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially

16    given Plaintiff's desire to purchase the[] [Infant Formulas] in the future if she can be assured that

17    the Infant Formulas do not contain (or have a material risk of containing) Heavy Metals.").

18    Plaintiff argues that these allegations are sufficient to establish standing for injunctive relief under

19    *Davidson*. Opp. at 18–19.

20    The Court finds Plaintiff's allegations are sufficient to confer standing for injunctive relief.

21    Other courts in cases involving products allegedly tainted with heavy metals have come out

22    similarly on this question. *See, e.g.*, *In re Plum Baby Food Litig.*, No. 4:21-CV-913-YGR, 2022

23    WL 16640802 (N.D. Cal. Jan. 12, 2022) (finding plaintiffs had Article III standing to seek

24    injunctive relief where "the plaintiffs . . . allege[d] that they would 'be willing to purchase Plum

25    Organic products in the future if [plaintiffs] could be certain that they do not contain (o[r] have a

26    material risk of containing) Heavy Metals or perchlorate'"); *Gagetta v. Walmart, Inc.*, 646 F.

27    Supp. 3d 1164, 1176–77 (N.D. Cal. 2022) ("Here the plaintiffs allege that they would like to

28    purchase the herbs and spices in the future but cannot rely on the lack of warning on the label that

1    the products risk containing heavy metals. Under the rule established in *Davidson*, that is

2    sufficient to establish standing for injunctive relief.").

3          b.   Equitable Jurisdiction

4          Defendants argue that Plaintiff's UCL and FAL claims seeking restitution should be

5    dismissed because they are equitable claims and Plaintiff has not established that she lacks an

6    adequate remedy at law.  Mot. at 19.  Defendants rely on the Ninth Circuit's ruling in *Sonner v.*

7    *Premier Nutrition Corp*, which held that "federal courts must apply equitable principles derived

8    from federal common law to claims for equitable restitution under" the UCL and CLRA.  971 F.3d

9    834, 837 (9th Cir. 2020).  One established equitable principle is that equitable remedies will not be

10   awarded when there is an "adequate remedy at law."  *Id*. at 842.  *Sonner's* "adequate remedy at

11   law" requirement also applies to claims under the FAL, *see Robie v. Trader Joe's Co.*, No. 20-cv-

12   7355-JSW, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021), and to claims for injunctive relief,

13   *see In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *3 (N.D.

14   Cal. Oct. 13, 2020).  "[T]he fundamental thing that *Sonner*, by its own terms, requires at the

15   pleadings stage is that the complaint 'allege that [the plaintiff] lacks an adequate legal remedy.'"

16   *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D.

17   Cal. Jan. 7, 2022) (quoting *Sonner*, 971 F.3d at 844).  Here, Plaintiff has not alleged that she lacks

18   an adequate remedy at law.  The Court therefore finds that it lacks equitable jurisdiction over

19   Plaintiff's claims for restitution.

20         Plaintiff counters that her claims for equitable relief "are in the alternative" and "there is

21   no binding precedent that holds that pleading equitable restitution in the alternative is improper."

22   Opp. at 19 (quotation omitted).  "Plaintiff is correct that [she] may plead alternative theories, but

23   'even an alternative equitable claim must plead any necessary prerequisite to such a claim.'"

24   *Kaiser Foundation Health Plan Inc. v. Merck & Co.*, No. 21-CV-05497-HSG, 2025 WL 844415,

25   at *16 (N.D. Cal. Mar. 18, 2025) (quoting *Aquilina v. Certain Underwriters at Lloyd's Syndicate*

26   *#2003*, 406 F. Supp. 3d 884, 917 (D. Haw. 2019)).  Here, Plaintiff has not made any allegations

27   about how an award of damages under any of her remaining claims would be inadequate.  Plaintiff

28   has therefore failed to plead an adequate remedy at law.  Accordingly, the UCL and FAL claims

United States District Court
Northern District of California

10

1    for restitution are **DISMISSED**.  Plaintiff's UCL, FAL, CLRA, fraud, and unjust enrichment

2    claims for injunctive relief may proceed.

3                    iii.    **Failure to State a Claim**

4            The Court now turns to the sufficiency of Plaintiff's allegations.  Defendants make the

5    following arguments: (1) Plaintiff's fraud-based UCL claim, CLRA and FAL claims, and fraud by

6    omission claim fail because Defendants had no duty to disclose the presence of Heavy Metals; (2)

7    Plaintiff's CLRA claim also fails because Plaintiff has not complied with the pre-suit notice

8    requirement under California Civil Code § 1782(a); (3) Plaintiff's FAL claim fails because an

9    FAL claim cannot be premised on an omission; (4) Plaintiff's unlawful UCL claims fail because

10   Plaintiff has not pled violations under the CLRA or FAL; (5) Plaintiff's unfair UCL claim fails

11   because it overlaps entirely with Plaintiff's deficient fraudulent and unlawful UCL claims; (6)

12   Plaintiff's claims for breach of the implied warranty of merchantability fail because Plaintiff has

13   not established privity and has not pled the Infant Formulas were unfit for the ordinary purpose for

14   which they were sold; and (7) Plaintiff's unjust enrichment claim fails because unjust enrichment

15   cannot be a standalone action in California.  Mot. at 21–29.

16                       a.   Fraud-Based UCL, CLRA, FAL, and Fraud Claims

17           Plaintiff accuses Defendants of (1) violating California's UCL under the fraudulent,

18   unlawful, and unfair prongs, Compl. ¶¶ 178–86; (2) violating California's CLRA, *id*. ¶¶ 194–203;

19   and (3) fraud by omission, *id*. ¶¶ 230–48.  The Court first addresses the adequacy of Plaintiff's

20   fraud-based UCL claim and CLRA claim.

21           The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."

22   Cal. Bus. & Prof. Code § 17200.  Similarly, the CLRA prohibits "unfair methods of competition

23   and unfair or deceptive acts or practices," Cal. Civ. Code § 1770, and the FAL "prohibits creation

24   or dissemination of any statement concerning property or services that is 'untrue or misleading.'"

25   *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d at 1087 (quoting Cal. Bus. & Prof. Code §

26   17500).  To state a claim under these consumer protection provisions, a plaintiff must allege that

27   the alleged representations or material omissions are likely to deceive a "reasonable consumer."

28   *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir. 1995).  This deception must be probable, not simply

United States District Court
Northern District of California

possible, *see id.*, and requires more than the "mere possibility" that a defendant's labels "might

conceivably be misunderstood by some few consumers viewing [the labels] in an unreasonable

manner," *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation and

quotations omitted). Rather, it must be "probable that a significant portion of the general

consuming public or of targeted consumers, acting reasonably in the circumstances, could be

misled." *Id.* at 1228–29 (citation and quotations omitted). California courts have defined a

"reasonable consumer" as an ordinary member of the consuming public who acts reasonably under

all of the circumstances. *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506–07

(2003).

      Plaintiff brings her consumer protection claims under a theory of omission.[2] Defendants

argue that Plaintiff's consumer protection claims should be dismissed because Plaintiff has failed

to allege that Defendants had a duty to disclose the presence of Heavy Metals in the Infant

Formulas. Mot. at 11.

### 1. Fraud-Based UCL, CLRA, and FAL Claims

      California consumer protection laws allow for "omission theor[ies] of consumer fraud."

*Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). "To plausibly allege a fraudulent

omission, the omission must either (1) 'be contrary to a representation actually made by the

defendant,' or (2) 'an omission of a fact the defendant was obliged to disclose.'" *In re Theos Dark

Chocolate Litig.*, 2024 WL 4336631, at *10 (quoting *Hodsdon*, 891 F.3d at 865). Plaintiff alleges

Defendants were obligated to disclose the presence of Heavy Metals in the Infant Formulas.

Compl. ¶¶ 2, 88, 91–92, 134, 236, 238, 240–41, 252. The Court must therefore determine whether

---

[2] Defendants argue that Plaintiff fails to plead a UCL and CLRA claim based on a theory of
affirmative misrepresentation. Mot. at 21 (arguing Plaintiff "fails to identify any actionable
affirmative misrepresentations that would lead consumers to form" the belief that the Infant
Formulas did not contain Heavy Metals). But Plaintiff does not bring claims based on an
affirmative misrepresentation theory. Plaintiff's claims are based on Defendants' alleged
omissions that the Infant Formulas "contained or had a material risk of containing Heavy Metals .
. . ." Compl. ¶ 3; *see also id.* ¶¶ 12, 21, 23–25, 32–33, 37, 117, 180–81, 189, 191, 199–200, 215,
227, 236, 238–44, 252; Opp. at 21 ("Allegations regarding affirmative misrepresentations relating
to the [Infant Formulas'] health and nutritional benefits are relevant to how reasonable consumers
interpret *the Omissions about [H]eavy [M]etals, which are the bases for the claims*.") (emphasis
added). The Court therefore need not consider whether Plaintiff has adequately pled UCL and
CLRA claims under an affirmative misrepresentation theory of liability.

1    Defendants had a duty to disclose.[3]  A "defendant only has a duty to disclose when either (1) the

2    defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the

3    product's function,' and the plaintiff alleges one of the four *LiMandri* factors."  *Hammerling v.*

4    *Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (quoting *In re Toyota RAV4 Hybrid*

5    *Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021)).  "The *LiMandri* factors are (1) the

6    defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive

7    knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a

8    material fact from the plaintiff; or (4) the defendant makes partial representations but also

9    suppresses some material facts."  *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v.*

10   *Judkins*, 52 Cal. App. 4th 326, 336 (1997)).  Thus, Plaintiff must allege that Defendants' failure to

11   disclose the presence of Heavy Metals in the Infant Formulas either (1) relates to an unreasonable

12   safety hazard or (2) affects the "central functionality of the product," is material, and meets one of

13   the four *LiMandri* factors.

14        The Court finds that Plaintiff has not plausibly pled that the Heavy Metals allegedly

15   contained in the Infant Formulas create an unreasonable safety hazard.  Plaintiff argues "there is

16   no safe level of [H]eavy [M]etals and [] the accumulation of [H]eavy [M]etals and even trace

17   amounts affect the infant or child's health."  Opp. at 25; *see also* Compl. ¶¶ 50 ("The Infant

18   Formulas contain . . . arsenic, which can cause cognitive defects in children who are exposed early

19   in life, and even neurological problems in adults who were exposed as infants."), 57 ("The Infant

20   Formulas also contain . . . cadmium, which has been shown to cause anemia, liver disease, and

21   nerve or brain damage in animals that eat or drink it."), 63 ("Lead exposure can seriously harm the

22   brain and nervous system in infants and children and is associated with a range of negative health

23

24   ─────────────────────────

     [3] Plaintiff argues she need not plead Defendants had a duty to disclose under *Hodson* or *LiMandri*.
25   In so arguing, Plaintiff relies on the "Attorney General's recent Amicus Briefs in the California
     Supreme Court and the Ninth Circuit" and the fact "that the California Supreme Court has not
26   required application of the *Hodsdon* or *LiMandri* duty to disclose standards for omission-based
     claims."  Opp. at 21, 23.  Defendants argue that *Hodson* is binding on this Court and it "thus does
27   not matter what the California Supreme Court 'has not required' on this score."  Dkt. No. 45
     ("Reply") at 9.  Defendants are correct.  *See Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003)
28   (cautioning that only in cases of "clear irreconcilability" can district courts "consider themselves
     bound by . . . intervening . . . authority and reject the prior opinion of [the Ninth Circuit] as having
     been effectively overruled").

United States District Court
Northern District of California

outcomes . . . ."); *id.* ¶¶ 39–49, 51–56, 58–62, 64–76.  But Plaintiff's argument is belied by their own allegation that the EPA and FDA have issued guidance regarding allowable limits of arsenic and cadmium.  *See id.* ¶¶ 54 (EPA and FDA set allowable limit of arsenic at 10 ppb for human consumption in apple juice and drinking water), 60 (EPA and FDA set allowable limit of cadmium at 5 ppb in drinking water and bottled water).

Plaintiff's allegations that "Defendant[s] sold [Infant Formulas] containing undisclosed arsenic levels at 7.9 ppb[,]" "undisclosed cadmium levels as high as 6.8 ppb[,]" and "undisclosed lead levels as high as 6.5 ppb" are also insufficient to plausibly plead that the Heavy Metals allegedly contained in the Infant Formulas create an unreasonable safety hazard.  *Id.* ¶¶ 56, 61. 69.  The EPA and FDA's allowable limit of arsenic at 10 ppb is higher than the 7.9 ppb level allegedly present in one of the seven Infant Formulas.  Additionally, although Plaintiff alleges that the 6.8 ppb cadmium level in one of the seven Infant Formulas is higher than the EPA and FDA's allowable limit of 5 ppm, Plaintiff has not plausibly alleged that the EPA and FDA's allowable limits "indicate the thresholds at which [] particular substance[s] pose[] a danger to human health."  *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-CV-03862-HSG, 2024 WL 1643696, at *9 (N.D. Cal. Apr. 16, 2024); *see also In re Theos Dark Chocolate Litig.*, 2024 WL 4336631, at *11 ("[E]ven if these new limits can be construed as safety thresholds, [p]laintiffs have not shown that the levels of lead or cadmium in the [p]roducts exceed the limits imposed by the [consent judgment] so as to present unreasonable safety hazards."); *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 828 (S.D. Cal. 2024) (agreeing with defendant that "[p]laintiff fail[ed] to plead 'whether the trace amounts at issue here are actually enough to cause the health effects that Plaintiff [] reiterates in the SAC'").  Moreover, Plaintiff admits there is "no federal standard for lead in baby food," and Plaintiff does not allege that the 6.5 ppb lead level in one of the seven Instant Formulas is a level which poses a danger to human health.  Having found Plaintiff has not plausibly pled a duty to disclose under the "unreasonable safety hazard" prong, the Court turns to the "central functionality" prong.

To satisfy the "central function" prong, a plaintiff must plausibly allege that the defect renders the product "incapable of use by any consumer."  *Hodsdon*, 891 F.3d at 864.  Plaintiff

United States District Court
Northern District of California

argues that "the Omissions defeat the central function of the [Infant Formulas] to nourish babies and that [H]eavy [M]etals do just the opposite—harm infants." *Id*. Plaintiff's argument is similar to the one raised by the plaintiffs in *In re Theos Dark Chocolate Litig*., 2024 WL 4336631, at *11. There, the plaintiffs argued that "the levels of lead or cadmium in the [p]roducts affect the central functionality of the products because the central function of food, even in the form of chocolate, is to provide nutrition and this is contradicted by the presence of heavy metals . . . ." *Id*. The Court disagreed, finding that the plaintiffs did not "plausibly ple[a]d that chocolate containing trace amounts of Heavy metals cease[] to function as food—or cease[] to provide any nutritional value." *Id*. Here, too, Plaintiff has not plausibly pled that the level of Heavy Metals allegedly present in the Infant Formulas renders the formulas "incapable of use by any consumer." *See Miller v. Philips N. Am. LLC*, No. 24-CV-03781-RFL, 2025 WL 582160, at *4 (N.D. Cal. Feb. 20, 2025) (finding the baby bottles at issue still performed their central function of "feeding babies and young children" and noting that "[t]o the extent that a question exists about whether the [p]roducts are made with safe materials, the duty to disclose is more appropriately analyzed as an obligation that arises due to the alleged unreasonable hazard that the [p]roducts present, as opposed to because there is an issue with the [p]roducts' central functionality"); *Hayden*, 2024 WL 1643696, at *10 ("The alleged presence of cadmium notwithstanding, [p]laintiff has not plausibly pled that the [p]roducts have ceased to function as a food, or even more specifically as flaxseed.").

Even if Plaintiff had adequately pled that the presence of Heavy Metals affects the "central functionality" of the Infant Formulas, Plaintiff's complaint has not pled any of the four *LiMandri* factors. The complaint does not allege that Defendants were "in a fiduciary relationship with [] [P]laintiff" or that Defendant "suppress[ed] some material facts." *LiMandri*, 52 Cal. App. 4th at 336. Additionally, Plaintiff's allegation that Defendants had "exclusive knowledge of material facts" is contradicted by the public availability of "[i]ndependent testing also confirm[ing] Heavy Metals" in two of Defendants' products. Compl. ¶ 126. *See Hayden*, 2024 WL 1643696, at *10 ("[T]he Court briefly further observes that . . . [p]laintiff's allegations concerning [d]efendant's supposedly exclusive knowledge of cadmium are implausible in light of the publicly accessible nature of ConsumerLab.org's testing."). Moreover, Plaintiff's allegation that Defendants "actively

conceal[ed] a material fact from [] [Plaintiff]" is entirely conclusory. Compl. ¶¶ 119, 234, 252. In arguing Defendants "actively concealed" the presence of Heavy Metals, Plaintiff relies on a consent judgment from a settlement between Defendants and the State of California regarding the lead levels in Defendants' infant and toddler formula products. Opp. at 29 n.12. Plaintiff, however, does not explain how the consent judgment shows Defendants actively concealed the presence of Heavy Metals in the Infant Formulas, or concealed anything else. And more importantly, Plaintiff's complaint makes no mention of the consent judgment.

Plaintiff has failed to plausibly plead Defendants had a duty to disclose the presence of Heavy Metals in the Infant Formulas. Accordingly, Plaintiff's fraud-based UCL claim and CLRA and FAL claims are **DISMISSED**.[4]

### 2.    CLRA Pre-Suit Notice Requirement

Although Plaintiff's CLRA claim is dismissed, the Court addresses Defendant's argument that Plaintiff has not satisfied the pre-suit notice requirement under California Civil Code § 1782. Mot. at 26–27.

A plaintiff suing for damages under the CLRA "must send a written notice of the claim to the defendant [at least] thirty days before filing suit 'by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.'" *Shu v. Toyota Motor Sales USA, Inc.*, 669 F. Supp. 3d 888, 899 (N.D. Cal. 2023) (quoting Cal. Civ. Code § 1782(a)). The plaintiff "must provide the defendant written notice of the 'particular alleged violations' and demand that he rectify them." *Scott v. Saraya USA, Inc.*, 675 F. Supp. 3d 1040, 1052 (N.D. Cal. 2023) (quoting Cal. Civ. Code § 1782(a)). "The purpose of the notice requirement [] is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements, and this purpose may only be accomplished by a literal application of the notice provisions." *Shu*, 669 F. Supp. 3d at 899

---

[4] Defendants separately argue that Plaintiff's FAL claim should be dismissed because the FAL does not encompass omissions. Mot. at 27. Plaintiff counters that "when 'a plaintiff alleges the defendant actually made a statement, but omitted information that undercuts the veracity of the statement, a claim under the FAL can proceed." Opp. at 31. Because Plaintiff's FAL claim has already been dismissed, *see supra* Section III.B.iii.a.1, the Court need not address this issue.

United States District Court
Northern District of California

1   (quotation and citation omitted).

2          Plaintiff contends she has satisfied the notice requirement under § 1782, arguing

3   Defendants "had notice of Plaintiff's claim several months before the filing of the instant lawsuit"

4   as "Plaintiff [] was involved in the previous matter in the Northern District of Illinois containing

5   the same CLRA claim." Opp. at 30. On January 26, 2024, Plaintiff filed an almost-identical

6   complaint in the Northern District of Illinois (*Lopez et al. v. Mead Johnson Nutrition Co. et al.*,

7   Case No. 1:24-cv-00691). That same day, Plaintiff sent Defendants a letter pursuant to § 1782.

8   *See* Compl. ¶¶ 202, 214, 228. The Court finds that Plaintiff's January 26, 2024 letter satisfies

9   § 1782's pre-suit notice requirement. Accordingly, the Court need not determine whether

10  Plaintiff's prior complaint filed in Illinois satisfies § 1782.

11         Plaintiff filed this case on May 8, 2024 in Contra Costa Superior Court (Case No. C24-

12  01231). On June 13, 2024, the case was removed to this District. Dkt. No. 1. Over three months

13  elapsed between Plaintiff's delivery of the § 1782 demand letter and Plaintiff's initiation of this

14  case in California. Additionally, Defendants do not argue that Plaintiff's letter was substantively

15  insufficient under the requirements of § 1782. The Court therefore finds Plaintiff has satisfied the

16  pre-suit notice requirement under § 1782. *See Floyd v. Saber Fitness Hegenberger*, LLC, No. 24-

17  CV-01278-TSH, 2024 WL 2971669, at *12 (N.D. Cal. June 11, 2024) ("As such, for any damages

18  claim, [plaintiff] must show that, 30 days prior to commencing this action, he sent a notice and

19  demand letter by certified or registered mail.").

20                          3.  Fraud by Omission Claim

21         To plead fraud by omission under California law, a plaintiff must plausibly allege "(1) the

22  concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3)

23  intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages."

24  *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013). As discussed above,

25  Plaintiff has not pled that Defendant had a duty to disclose the presence of Heavy Metals in the

26  Infant Formulas. *See supra* Section III.B.iii.a.1. Accordingly, Plaintiff's fraud by omission claim

27  is **DISMISSED**.

28

United States District Court
Northern District of California

17

b.    UCL Claim (Unlawful and Unfair Prongs)

Defendants argue that Plaintiff's unlawful UCL claim fails because "the underlying 'unlawful' claims [CLRA and FAL violations] fail . . . ." Mot. at 26. "The unlawful prong requires showing the defendants violated another borrowed law, and virtually any state, federal, or local law can serve as the predicate for an action under section 17200." *Gagetta*, 646 F. Supp. 3d at 1177 (quotations and citation omitted). As explained above, *see supra* Section III.B.iii.a, Plaintiff has failed to plausibly plead an FAL violation, CLRA violation, or fraud by omission. Moreover, Plaintiff has not pled a claim for breach of the implied warranty of merchantability. *See infra* Section III.B.iii.d. Accordingly, Plaintiff's UCL claim arising under the unlawful prong is **DISMISSED**.

Defendants also argue that Plaintiff's unfair UCL claim fails because the claim "overlap[s] entirely" with Plaintiff's UCL claims under the fraudulent and unlawful prongs. Courts in this District have reiterated that when a plaintiff's claim "under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs [] do not survive.'" *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017)). The Court has already determined that Plaintiff has not plausibly pled a UCL claim under the fraudulent or unlawful prongs. Accordingly, Plaintiff's UCL claim under the unfair prong is **DISMISSED**.

c.    Claims for Breach of the Implied Warranty of Merchantability

Plaintiff brings two claims for breach of the implied warranty of merchantability under California Commercial Code § 2314 and common law. Defendants argue Plaintiff's implied warranty claims should be dismissed because (1) Plaintiff lacks privity with Defendants as required under § 2314, and (2) Plaintiff has not pled the Infant Formulas were not fit for ordinary use. Mot. at 28.

Under California law, the implied warranty of merchantability can be violated if "(1) the product is not 'fit for the ordinary purposes for which such good [is] used,' or (2) does not '[c]onform to the promises or affirmations of fact made on the container or label if any.'" *Collyer*

1    *v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1288–89 (N.D. Cal. 2024) (quoting Cal. Com.

2    Code § 2314(2)).  Generally, a plaintiff alleging a breach of the implied warranty of

3    merchantability "must stand in vertical contractual privity with the defendant." *Id*. (quotation and

4    citation omitted).  "However, for implied warranty claims, an exception to the privity requirement

5    has been made 'in cases involving foodstuffs, where it is held that an implied warranty of fitness

6    for human consumptions runs from the manufacturer to the ultimate consumer.'"  *Id*. (quoting

7    *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695, 268 P.2d 1041 (1954)).  Because Plaintiff's

8    implied warranty claims involve infant formula (i.e., "foodstuffs"), Plaintiff need not stand in

9    vertical contractual privity with Defendant.

10       To state a claim for breach of the implied warranty of merchantability, a plaintiff must

11   allege a "fundamental defect that renders the product unfit for its ordinary purpose." *T & M Solar*

12   *& Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015) (citation

13   omitted).  "In cases involving human food, a party can plead that a product violates the implied

14   warranty of merchantability through allegations that the product was unsafe for consumption,

15   contaminated, or contained foreign objects." *Barnes v. Nat. Organics, Inc.*, No. 5:22-CV-0314-

16   JGB-PLAx, 2022 WL 4283779, at *8 (C.D. Cal. Sept. 13, 2022) (citing *Thomas v. Costco*

17   *Wholesale Corp.*, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014)).

18       Here, Plaintiff alleges that "Defendants impliedly warranted that the [Infant Formulas]

19   were in merchantable condition and fit for ordinary use (consumption by infants with no

20   development or health risks)" but "the Infant Formulas were not fit for their ordinary use . . . as

21   they contained . . . Heavy Metals . . . ."  Compl. ¶¶ 221–22; *see also id*. ¶¶ 210–11.  Plaintiff

22   specifically alleges that the EPA and FDA "have set limits concerning the allowable limit of

23   arsenic at 10 ppb for human consumption in apple juice . . . and drinking water," "[t]he EPA has

24   set a maximum contaminant level for cadmium in drinking water of 5 ppb[,]" and "[a]lthough

25   there is no federal standard for lead in baby food, health experts . . . have agreed that lead in baby

26   foods should not exceed 1 ppb." *Id*. ¶¶ 54, 60, 68.  Plaintiff further alleges that Defendants sold

27   Infant Formulas "containing undisclosed arsenic levels at 7.9 ppb," "cadmium levels as high as 6.8

28   ppb[,]" and "lead levels as high as 6.5 ppb." *Id*. ¶¶ 56, 61, 69.

United States District Court
Northern District of California

Plaintiff has not plausibly pled that the Infant Formulas are unsafe for human consumption. Plaintiff's allegations do not suggest that the levels of arsenic, cadmium, and lead present in the Infant Formulas "constitute a level at which the complained-of health risks occur." *Hayden*, 2024 WL 1643696, at *10. Although Plaintiff's complaint generally describes potential health risks raised by the presence of Heavy Metals, Plaintiff has not plausibly pled that the Infant Formulas "fail to conform to the standard performance of like products used in the trade," are "unfit for [their] ordinary purpose as a food product[,]" or are "not merchantable or fit for use" as infant formula. *In re Theos Dark Chocolate Litig.*, 2024 WL 4336631, at *13 ("Plaintiffs have not, for example, alleged that the levels of [h]eavy [m]etals in the [p]roducts exceed the limits imposed by the [consent judgment] or that chocolate bars ordinarily do not contain or potentially contain [h]eavy [m]etals."). Courts have dismissed similar claims for breach of the implied warranty of merchantability. *See Miller*, 2025 WL 582160, at *5 ("[T]he 'ordinary purpose' for which [d]efendant's [p]roducts are used is to deliver formula to infants and young children. Plaintiffs are not contesting that the [p]roducts work to achieve that aim, but instead are alleging that the microplastics that leach from the [p]roducts make them unsafe for use. But that allegation does not render the [p]roducts unusable by consumers . . . ."); *Gagetta*, 646 F. Supp. 3d at 1179 ("Plaintiffs' conclusory assertion that the products were 'unsafe for human consumption,' [] is not plausible unless they can plead supporting facts showing that the herbs and spices purchased by the plaintiffs were somehow distinct from those that are safe."); *Hayden*, 2024 WL 1643696, at *10 ("Plaintiff's repeated incantation of 'high,' 'unsafe,' and 'unlawful' levels of cadmium is not a sufficient substitute for factual allegations tying the level of cadmium in the [p]roducts to the supposed negative health risks and outcomes flowing from elevated exposure."); *see also supra* Section III.B.iii.

Accordingly, Plaintiff's implied breach of warranty claims are **DISMISSED**.

### d. Unjust Enrichment Claim

Defendants argue that Plaintiff's unjust enrichment claim fails because unjust enrichment is not a standalone cause of action in California. Mot. at 29. Defendants further argue that "[e]ven if the Court construes this claim as one for restitution, it still fails because it rises and falls

1   with the other faulty claims." *Id.* (citation omitted).  The Court agrees.  Because Plaintiff has

2   failed to plausibly plead an actionable misrepresentation or omission, the unjust enrichment claim

3   must also be dismissed.  *See In re Apple Processor Litig.*, No. 18-CV-00147-EJD, 2022 WL

4   2064975, at *12 (N.D. Cal. June 8, 2022), *aff'd*, No. 22-16164, 2023 WL 5950622 (9th Cir. Sept.

5   13, 2023) ("[A] restitution claim based on fraud or consumer protection claims must nonetheless

6   be dismissed if the plaintiff fails to sufficiently plead an actionable misrepresentation or

7   omission."); *Smith v. Intel Corp.*, 745 F. Supp. 3d 853, 865 (N.D. Cal. 2024) ("Here . . .

8   [p]laintiffs' unjust enrichment claim relies on the same set of allegations as [p]laintiffs' fraud

9   claims addressed above, namely that [Defendant] fraudulently omitted information . . . such that

10  their unjust enrichment claim relying on the same alleged fraudulent conduct must also be

11  dismissed.") (quotations and citation omitted).  Accordingly, Plaintiff's unjust enrichment claim is

12  **DISMISSED**.

**IV.    CONCLUSION**

14  The Court **GRANTS** Defendants' motion to dismiss, Dkt. No. 34, and Defendants' request

15  for judicial notice, Dkt. No. 45.  Any amended complaint must be filed within 21 days of the date

16  of this Order.

17  **IT IS SO ORDERED.**

18  Dated:  3/24/2025

20  HAYWOOD S. GILLIAM, JR.
United States District Judge

21