United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DOMINIQUE LOPEZ,

　　　　　Plaintiff,

　　v.

MEAD JOHNSON NUTRITION
COMPANY, et al.,

　　　　　Defendants.

Case No.　24-cv-03573-HSG

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**

Re: Dkt. No. 58

Pending before the Court are Defendants Mead Johnson Nutrition Company and Mead Johnson & Company, LLC's (collectively "Defendants" or "Mead") motion to dismiss Plaintiff's amended complaint.  Dkt. No. 58.  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons explained below, the Court **GRANTS** the motion without leave to amend.

**I.　　BACKGROUND**

Plaintiff Dominque Lopez purchased Mead infant formulas between May 2021 and September 2022 from retailers in Contra Costa County, California.  Dkt. No. 56 ("Am. Compl.") ¶¶ 31–32.[1]　Those products included Enfamil® Nutramigen, Enfamil® ProSobee, and Enfamil® Neuro Pro.  *Id.* ¶ 31.  She also asserts claims on behalf of a putative class regarding infant formulas she did not purchase: Enfamil® A.R., Enfamil® Gentlease, Enfamil® Enspire Gentlease, and PurAmino Hypoallergenic (together "Products").  Plaintiff alleges that these formulas' packaging contains deceptive statements that imply that they are generally nutritious and have "no

---

[1] The facts detailed in this order are pled in the Amended Complaint, Dkt. No. 56, which the court must accept as true on a motion to dismiss.  *Marceau v. Blackfeet Housing Auth.*, 540 F.3d 916, 930 (9th Cir. 2008).

detrimental, harmful, or genetically engineered ingredients." *Id.* ¶¶ 8–9. For example, the challenged labels state that the formulas are "brain building" or "support[] brain… development," *id.* ¶ 44(a)–(h), and are "recommended" or "trusted" by experts and pediatricians, *id.* ¶ 44(a), (c)–(h) (all but Enfamil® Enspire Gentlease). Others contain statements that the formulas promote immune health, *id.* ¶ 44(a)–(b), (d)–(e), (g); bone health, *id.* ¶ 44(a), (h); eye health, *id.* ¶ 44(d), (h); were inspired by breast milk, *id.* ¶ 44(b), (d); and do not contain artificial colors, flavors, sweeteners, or growth hormones. *Id.* ¶ 44(e)–(g). Plaintiff alleges Mead's website contains similar representations, *id.* ¶ 49–51, but does not allege that any of the website statements were false. *Id.* ¶¶ 44, 55.

Plaintiff alleges that her counsel's independent testing of the Products revealed a presence of arsenic, cadmium, or lead in each of the formulas, *id.* ¶ 58–60, and that other infant formulas may be manufactured without detectable levels of heavy metals.

| Infant Formula | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) |
|---|---|---|---|
| Enfamil® A.R. | 3.4 | 3.2 | 1.2 |
| Enfamil® Gentlease | 3.7 | 2.6 | 1.7 |
| Enfamil® Enspire Gentlease | 5.0 | 2.3 | < 1.0 |
| Enfamil® NeuroPro | < 2.2 | 2.0 | < 1.0 |
| Enfamil® NeuroPro Sensitive | 5.1 | < 1.3 | 2.3 |
| Enfamil® Nutramigen | 7.9 | 4.6 | 6.5 |
| Enfamil® ProSobee | 6.7 | 6.8 | 3.5 |

*Id.* ¶ 58.

| Infant Formula | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) |
|---|---|---|---|
| Bobbie Organic Infant Formula | < 2.2 | < 1.3 | < 1.0 |

*Id.* ¶ 119. She alleges that counsel's consumer surveys revealed that people would expect a company to test for those substances and disclose whether "detectable levels" were found. *Id.* ¶ 106. Her counsel's surveys purported to show that, when asked directly, consumers would understand the formulas' packaging to imply there were no heavy metals. *Id.* ¶ 140–55.

United States District Court
Northern District of California

Plaintiff explains that the packaging contains "material misrepresentations and partial misrepresentations" because Mead failed to disclose the presence of heavy metals in the Products. *Id.* ¶ 11. Plaintiff claims these statements "deceptively hid material information about the quality and nutritiousness of the Infant Formulas," *id.* ¶ 54, and that the specific statements regarding the formulas "contradict the inclusion of the harmful Heavy Metals by promising a safe, healthy, and nutrition infant formula. These partial statements also required Mead to make a full disclosure of the harmful Heavy Metals." *Id.* ¶ 44.

Plaintiff sued Mead individually and on behalf of similarly situated individuals in state court. The case was removed to federal court, Dkt. No. 1, and the Court granted Mead's motion to dismiss the first complaint in its entirety. Dkt. No. 55.

Plaintiff amended her complaint, alleging six counts under California state law: (1) Unfair Competition Law, (2) False Advertising Law, (3) Consumers Legal Remedies Act, (6) Fraud by Misrepresentation, (7) Negligent Misrepresentation, and (8) Unjust Enrichment. Am. Compl. ¶¶ 182–240.[2] Mead moves to dismiss the amended complaint without leave to amend. Dkt. No. 58.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To meet her burden of establishing standing, a plaintiff must show she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). And where a plaintiff seeks injunctive relief, she must also demonstrate a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946

---

[2] The Amended Complaint does not contain a Count 4 or Count 5, which the Court assumes represents two counts not realleged.

3

(9th Cir. 2011).

If a plaintiff fails to establish standing or any other aspect of subject matter jurisdiction, "the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against

4

the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction

#### i.   Primary Jurisdiction

Primary jurisdiction is a doctrine intended to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties[,]" and "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956). "Although the question is a matter for the court's discretion," courts normally consider four factors outlined in *Syntek Semiconductor Co. v. Microchip Tech*: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." 307 F.3d 775, 781 (9th Cir. 2002).

Mead suggests that the Food and Drug Administration has primary jurisdiction to determine appropriate levels of heavy metals in infant formulas, so the case should be dismissed. Dkt. No. 58 at 13–14. Plaintiffs argue that the FDA has not completed any regulatory action to control the amount of heavy metals in infant formula, and even if it had, that is separate from their claims that the packaging was misleading. Dkt. No. 61 at 14–16.

This argument was presented to the Court on the first motion to dismiss, and the Court rejected it. Dkt. No. 55 at 6–8. Mead has not presented any argument that counsels for a different result the second time, so the Court again declines to dismiss on this basis for the reasons

United States District Court
Northern District of California

articulated in the prior order. *Id.*; *see Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) (declining to apply the primary jurisdiction doctrine and explaining "this is not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading"); *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1085–86 (N.D. Cal. Sept. 27, 2024).

### ii.    Standing

#### a.    Products Plaintiff Did Not Purchase

Mead contends that Plaintiff lacks Article III standing to sue for products that she did not purchase. In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 20-CV-03184-HSG, 2021 WL 3191733, at *2 (N.D. Cal. July 28, 2021) (citing *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012)). "The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller*, 912 F. Supp. 2d at 869; *see also Papasan v. Dometic Corp.*, 2017 WL 4865602, at *8 (N.D. Cal. Oct. 27, 2017); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *12–13 (N.D. Cal. Oct. 2, 2013). If products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012). However, "[w]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.[3]

Courts have found substantial similarity for purposes of standing where: (1) the products are physically similar; (2) the differences between the products are immaterial because the legal

---

[3] Defendants contend that the "substantial similarity" theory of standing is legally flawed, arguing that "[w]hen a plaintiff does not allege she bought a product, she has no injury-in-fact and thus lacks standing to sue about it." Dkt. No. 65 at 10. But this argument relies on cases from other circuits, and absent definitive guidance from the Ninth Circuit, the Court continues to find the approach applied by the substantial majority of courts in this district to be persuasive.

United States District Court
Northern District of California

claim and injury to the customer is the same; and (3) both the products and the legal claims and injury are similar. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *4–8 (N.D. Cal. Mar. 13, 2014); *Zimmerman v. L'Oreal USA, Inc.*, No. 22-CV-07609-HSG, 2023 WL 4564552, at *3 (N.D. Cal. July 17, 2023) (quoting *id.* at *8). "That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Zimmerman*, No. 22-cv-07609, 2023 WL 4564552, at *3 (internal quotation omitted).

Plaintiff alleges that she purchased Enfamil® Nutramigen, Enfamil® ProSobee, and Enfamil® Neuro Pro. Am. Compl. ¶ 31. The infant formulas at issue include those three plus Enfamil® A.R., Enfamil® Gentlease, Enfamil® Enspire Gentlease, and PurAmino Hypoallergenic. *Id.* ¶ 40. She argues that the Products' packaging contains similar representations about expert representations and beneficial characteristics. *See, e.g., id.* ¶ 44(a)–(h) ("brain building" or "supports brain… development,"), *id.* ¶ 44(a), (c)–(h)("recommended" or "trusted" by experts and pediatricians); Dkt. No. 61 at 17–18. Mead argues that these products are not similar because they vary in composition (milk-based, soy-based or amino-based) and contain different ingredients and formulations. Dkt. No. 58 at 15.

The Court finds that the products Plaintiff purchased are substantially similar in the relevant characteristics to the products she did not purchase. The products are all infant formulas, with similar representations on their packaging. Dkt. No. 56 ¶ 44(a)–(h). Mead contends that the products differ because they vary in physical composition, but it never explains why those differences matter with respect to the representations at issue. Dkt. No. 58 at 15. In this district, courts have found that claims may proceed even where products differ to a degree and contain different ingredients, if the misrepresentations are similar and the differences in the products are not material to those representations. *See, e.g., Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C–11–2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013) (denying dismissal of class claims because "analyzing the 'sufficient similarity' of the products is not a standing inquiry, but rather an early analysis of the typicality, adequacy, and commonality requirements of Rule 23"). The Court **DENIES** Mead's

7

motion to dismiss on this basis.

b.    Equitable Jurisdiction

Defendants argue that Plaintiff's UCL, CLRA, FAL, and unjust enrichment claims seeking restitution and disgorgement should be dismissed because they are equitable remedies and Plaintiff has not established that she lacks an adequate remedy at law.  Dkt. No. 58 at 16–17.  Defendants rely on the Ninth Circuit's ruling in *Sonner v. Premier Nutrition Corp*, which held that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under" the UCL and CLRA.  971 F.3d 834, 837 (9th Cir. 2020).  One established equitable principle is that equitable remedies will not be awarded when there is an "adequate remedy at law." *Id.* at 842.  *Sonner*'s "adequate remedy at law" requirement also applies to claims under the FAL, *see Robie v. Trader Joe's Co.*, No. 20-cv-7355-JSW, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021), and to claims for injunctive relief, *see In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020). "[T]he fundamental thing that *Sonner*, by its own terms, requires at the pleadings stage is that the complaint 'allege that [the plaintiff] lacks an adequate legal remedy.'" *Johnson v. Trumpet Behav. Health*, LLC, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D.  Cal. Jan. 7, 2022) (quoting *Sonner*, 971 F.3d at 844).

Plaintiff's claim for monetary relief is based on the allegation that she would not have paid a premium price for the products had she known that the formulas contained detectable amounts of heavy metals.  Am. Compl. ¶ 25–27.  Her claimed damages are the difference between what she paid and what she otherwise would have paid.  *Id.* ¶¶ 153–57.  Mead argues that Plaintiff has not pled inadequate legal remedies in seeking restitution and disgorgement, but does not challenge Plaintiff's requests for injunctive relief.  Dkt. No. 58 at 16–17 & n.4.  Missing the thrust of Mead's argument, Plaintiff then defended her requests for injunctive relief without explaining why her other equitable remedies are necessary.  Dkt. No. 61 at 18.  The Court finds that Plaintiff fails to plead that damages would insufficiently compensate her for the alleged overpayment, and thus **GRANTS** Mead's motion to dismiss Plaintiff's claims for restitution and disgorgement.

United States District Court
Northern District of California

### B.     Failure to State a Claim

#### i.      "Fraudulent" UCL Claim, FAL, and CLRA

Plaintiff accuses Mead of violating (1) the fraudulent, unlawful, and unfair prongs of the UCL, Am. Compl. ¶¶ 182–96; (2) the False Advertising Law, *id.* ¶¶ 197–205; and (3) the CLRA, *id.* ¶¶ 206–16.

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Similarly, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices," Cal. Civ. Code § 1770, and the FAL "prohibits creation or dissemination of any statement concerning property or services that is 'untrue or misleading.'" *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d at 1087 (quoting Cal. Bus. & Prof. Code § 17500).  To state a claim under these consumer protection provisions, a plaintiff must allege that the claimed representations or material omissions are likely to deceive a "reasonable consumer." *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir. 1995).  This deception requires more than the "mere possibility" that a defendant's labels "might conceivably be misunderstood by some few consumers viewing [the labels] in an unreasonable manner," *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation and quotations omitted).  Rather, it must be probable "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. at 1228–29 (citation and quotations omitted).  California courts have defined a "reasonable consumer" as an ordinary member of the consuming public who acts reasonably under all circumstances.  *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506–07 (2003).

The challenged statements claim that experts and pediatricians "recommend" the products and that the formulas contain substances that provide identified benefits, such as "brain building DHA," "more than 2x DHA of Elecare to support brain & eye development," "calcium for strong bones," "vitamin C for immune support," "vitamins A, C & E for immune support," and were made "with lactoferrin."  Am. Compl. ¶ 44(a)–(h).  Plaintiff does not allege that any of these

9

statements were false.

Instead, her theory is that "each challenged statement speaks directly to the quality and nutritional benefits of the Products" without mentioning the potential presence of heavy metals. Dkt. No. 61 at 23.  In Plaintiff's telling, "[t]he crux of liability here is that Defendants fail to disclose the presence of heavy metals while promoting the Products' high quality and nutritiousness through the Claims."  *Id.*  She alleges that the statements "contradict the inclusion of the harmful Heavy Metals by promising a safe, health, and nutritious infant formula" and "required Mead to make full disclosures of the presence of heavy metals."  Am. Compl. ¶ 44

The Court finds this argument is based on implausible assertions about what a reasonable consumer would understand the challenged representation to say about the Products.  First, from those statements, Plaintiff argues that a reasonable consumer would infer "quality and nutritiousness."  Dkt. No. 61 at 24.  Then, from that implicit representation about the formula's general quality, the reasonable consumer would also understand that there are no detectable levels of heavy metals.[4]  *Id*.  But while making some extrapolations from advertisements could be plausible in some circumstances, this is not one of them.  There is nothing that logically connects an expert's recommendation or the presence of certain substances in an infant formula with the absence of some other substance.

Courts have consistently rejected this type of "inferential leap" in food labeling cases.  *See, e.g., Davidson v. Sprout Foods Inc.*, No. 22-CV-01050-RS, 2022 WL 13801090 at *3 (N.D. Cal. Oct. 21, 2022) ("The California Court of Appeal has cautioned against permitting food labeling claims that rely on inferential leaps and which could ultimately 'place almost any advertisement truthfully touting a product's attributes at issue for litigation.'") (internal citations omitted).  *See also Hayden v. Bob's Red Mill Natural Foods, Inc.*, No. 23-cv-3862-HSG, 2024 WL 1643696, at *9 (N.D. Cal. Apr. 16, 2024) ("Where Plaintiff has not alleged that the statements misstate the truth of the relevant product characteristic (i.e. the gluten content or organic composition), as

---

[4] Plaintiff alleges that no amount of heavy metals is healthy for human consumption, Am. Compl. ¶ 99, but acknowledges that testing for heavy metals has a minimum detection threshold.  *See id*. ¶ 119.

United States District Court
Northern District of California

United States District Court
Northern District of California

opposed to the unstated, extrapolated characteristic (i.e. 'healthiness'), they do not support his theories."); *Broussard v. Dole Packaged Foods, LLC*, No. 23-cv-3320-HSG, at *13 (N.D. Cal. Apr. 8, 2024). "[A]llegations of deception must be assessed according to what the advertisement or label depicts and actually says, and not allegations of implied meaning." *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-cv-569-CAB-WNG, 2019 WL 3817948, at *9 (S.D. Cal. Aug. 14, 2019).

Here, Plaintiff fails to plausibly explain why a reasonable consumer would understand the challenged statements to make promises about the absence of heavy metals, when none of the statements concern those substances. In an effort to do so, Plaintiff alleges that counsel conducted a survey in which over 91 percent of a subset of parents answered "yes" to the questions "Do you expect a company to test for arsenic, cadmium, lead, and/or mercury in infant formula that will be fed to infants?" and "Would you expect a company to disclose if there were detectible levels, or risk, of arsenic, cadmium, lead, and/or mercury in an infant formula?" Am. Compl. ¶ 106. Plaintiff also alleges that 77 percent of consumers would not "expect arsenic, cadmium, lead, and/or mercury in the infant formula" after seeing the label. *Id.* ¶ 141. But these generalized questions to an undisclosed number of people, detached from any legal standard fail to support the plausibility of Plaintiff's reasonable consumer allegation. *See Becerra*, 945 F.3d at 1230 (survey did "not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet'); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-3221-JSC, 2020 WL 7043879, at *3–4 (N.D. Cal. Dec. 1, 2020) ("Plaintiff's barebones allegation regarding the results of a 2020 survey which allegedly showed that 69.5% of 400 consumers believed that the 'Vanilla' representation on the Product meant that the Product's flavor comes exclusively fron the vanilla bean . . . [did] not make plausible that reasonable consumers understand that 'vanilla" soymilk is flavored exclusively with vanilla bean.").

Similarly, Plaintiff's "partial misrepresentation" claims fail.[5] To succeed on this claim,

---

[5] Mead argues that Lopez's partial misrepresentation theory is a recasting of her omission theory from the first motion to dismiss. Dkt. No. 58 at 23. The Court rejected that theory once already,

Plaintiff must plead that Mead has a "duty to disclose" because the suppressed facts are "contrary to a representation actually made by the defendant," *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018); *Anderson v. Apple, Inc.* 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020). Her claim for partial misrepresentation only succeeds if the challenged statements read together represent that the Products do not contain any detectable levels of heavy metals, and that this representation would be contradicted by a disclosure of the presence of the alleged amount of heavy metals. It is not enough for the disclosure to only provide more information about the product. *Anderson*, 500 F. Supp. 3d at 1013–14.

The Court finds that Mead's representations are not contradicted by the alleged presence of heavy metals. *Bob's Red Mill*, No. 23-cv-3862-HSG, 2024 WL 1643696, at *9. The presence of DHA and other nutrients, or the benefits of those ingredients, do not become less true because the Products contain some detectable amount of heavy metals. Dkt. No. 58 at 19; Dkt. No. 61 at 23–24. The same is true regarding the experts' recommendation of the Products. *Id.* The alleged presence of heavy metals is additional information that is not actionable as a partial misrepresentation. *See Anderson*, 500 F. Supp. 3d at 1013–14 (finding true statements that do not contradict, but provide additional information, are not actionable partial misrepresentations).[6]

The Court thus **GRANTS** Mead's motion to dismiss the FAL, and CLRA, fraudulent UCL claims.

### ii. "Unlawful" UCL Claim

Defendants argue that Plaintiff's unlawful UCL claim fails because the preceding claims fail. Dkt. No. 58 at 24. "The unlawful prong requires showing the defendants violated another borrowed law, and virtually any state, federal, or local law can serve as the predicate for an action under section 17200." *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1177 (N.D. Cal. 2022) (quotations and citation omitted). Plaintiff has failed to plausibly plead a FAL or CLRA violation.

Dkt. No. 55 at 12–16, and evaluates Lopez's new claims on their own merits. *See* Dkt. No. 61 at 23.

[6] In granting the first motion to dismiss, the Court found that Plaintiff failed to adequately allege an omission theory. Dkt. No. 55 at 12–16. Plaintiff changed her approach, but not the substance, in the Amended Complaint, which did not cure the deficiencies.

United States District Court
Northern District of California

United States District Court
Northern District of California

Accordingly, Plaintiff's UCL claim arising under the unlawful prong is **DISMISSED**.

### iii.    "Unfair" UCL Claim

Defendants also argue that Plaintiff's unfair UCL claim fails because the claim "overlap[s] entirely" with Plaintiff's UCL claims under the fraudulent and unlawful prongs.  Courts in this District have reiterated that when a plaintiff's claim "under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs … do not survive.'" *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017).  The Court has already determined that Plaintiff has not plausibly pled a UCL claim under the fraudulent or unlawful prongs.  Accordingly, Plaintiff's UCL claim under the unfair prong is **DISMISSED**.

### iv.    Fraudulent Misrepresentation

To successfully plead fraudulent misrepresentation, a plaintiff must plead, among other elements, "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false…." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605–06 (2014) (quoting *Perlas v. GMAC Mortg., LLC*, 187 Cal.App.4th 429, 434 (2010).  Plaintiff never identifies a false representation or a representation that Mead knew was false.  Rather, she acknowledges that "[t]he crux of liability here is that Defendants fail to disclose the presence of heavy metals while promoting the Product's high quality and nutritiousness through the Claims."  Dkt. No. 61 at 23.  But that is essentially the omission theory the Court already rejected.  Dkt. No. 55 at 11–16.  On that basis, the Court **DISMISSES** the fraudulent misrepresentation count.

### v.    Negligent Misrepresentation

"To state a claim for negligent misrepresentation under California law, a plaintiff must allege: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." *Crystal Springs*

*Upland Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 969 (N.D. Cal. 2016).[7]  "Justifiable reliance" is determined using the "reasonable consumer" standard.  *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. Appx. 561, 562 (9th Cir. 2008).

The Court applied the reasonable consumer standard in dismissing Plaintiff's UCL, FAL, and CLRA claims.  *See supra* § III-B-i.  For those reasons, the Court **GRANTS** Mead's motion to dismiss the negligent misrepresentation count.

### vi.  Unjust Enrichment

Because Plaintiff has failed to plausibly plead an actionable misrepresentation or omission, the unjust enrichment claim must also be dismissed.  *See In re Apple Processor Litig.*, No. 18-CV-00147-EJD, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022), *aff'd*, No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) ("[A] restitution claim based on fraud or consumer protection claims must nonetheless be dismissed if the plaintiff fails to sufficiently plead an actionable misrepresentation or omission."); *Smith v. Intel Corp.*, 745 F. Supp. 3d 853, 865 (N.D. Cal. 2024) ("Here . . . [p]laintiffs' unjust enrichment claim relies on the same set of allegations as [p]laintiffs' fraud claims addressed above, namely that [defendant] fraudulently omitted information . . . such that their unjust enrichment claim relying on the same alleged fraudulent conduct must also be dismissed.") (quotations and citation omitted).  Accordingly, Plaintiff's unjust enrichment claim is **DISMISSED**.

## IV.  CONCLUSION

The Court **GRANTS** the motion to dismiss.  Dkt. No. 58.  Plaintiff previously had an opportunity to amend and has failed to cure the legal deficiencies the Court previously identified

---

[7] Defendant quotes *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) for the premise that "'[c]ommon law claims for fraudulent and negligent misrepresentation are analyzed' under the same 'reasonable consumer' framework." Dkt. No. 58 at 24.  But this partial quotation does not appear in that opinion and that case did not involve these causes of action. *Becerra*, 945 F.3d at 1228.  The Court **ORDERS** Defense counsel **TO SHOW CAUSE** why it should not be sanctioned for this inaccurate quotation. *See Oneto v. Watson*, 808 F. Supp. 3d 974, 980 (N.D. Cal. Oct. 10, 2025) ("Courts across the country have issued sanctions against attorneys ... for submitting fictitious case citations, fictitious quotations, and related misrepresentations to the court.").

(and to the extent the Amended Complaint advances new theories, they are not viable for the reasons explained in this order).  The Court therefore **DISMISSES** the case against Defendants without leave to amend.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (quotation omitted)).  The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff and to close the case.

The Court **DIRECTS** Defense counsel **TO SHOW CAUSE** why it should not be sanctioned for including a non-existent quotation from *Becerra v. Dr Pepper/Seven Up, Inc.* 945 F.3d 1225, 1228 (9th Cir. 2019).  Defense counsel shall file a statement of two pages or less by March 27, 2026.

**IT IS SO ORDERED.**

Dated:    3/20/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

15